IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SARAH SIMON,

                       Plaintiff,                    OPINION AND ORDER

    v.

                                                     18-cv-909-wmc

COOPERATIVE EDUCATIONAL
SERVICE AGENCY #5,

                       Defendant.

Plaintiff Sarah Simon brings this lawsuit against her former employer, Cooperative Educational Service Agency #5 ("CESA 5"), alleging violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. SSS 2601, *et seq*. Defendant CESA 5 moved for summary judgment (dkt. #11) and successfully demonstrated that it is entitled to summary judgment on most of plaintiff's claims. However, plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to liability on one of her FMLA interference claims. This still leaves an unaddressed hurdle: even if plaintiff were to prevail on her remaining claim at trial, it is unclear to what, if any, remedy she would be entitled. Accordingly, the court has established a separate briefing schedule as to plaintiff's requested remedy or remedies.

UNDISPUTED FACTS[1]

Defendant CESA 5 is a municipal entity that provides services to various school districts in Wisconsin. One such service is the REACH Academy, which is an alternative

---

[1] The following facts are taken from defendant's proposed findings of fact and both parties' responses to those findings. Unless otherwise indicated, the facts are found to be material and undisputed when viewed in the light most favorable to plaintiff as the non-moving party.

school for elementary students with emotional and/or behavioral disabilities who have experienced difficulties in a traditional school setting. The REACH Academy is located in the same building as the Columbia Marquette Adolescent Needs School ("COMAN"), which serves middle and high school students with similar disabilities and difficulties in traditional school settings. COMAN was established in 1988; REACH Academy was established in 2014.

Plaintiff Sarah Simon was first hired by CESA 5 in July of 2014 to help open and teach at the REACH Academy. Under her initial contract, Simon served as an alternative education teacher for the 2014-2015 school year. Her contract was renewed for the 2015-2016 school year and again the next year. During the 2016-2017 school year, Simon's job title was "Alternative Program Lead Teacher for REACH," for which she was paid an annual salary of $48,554.35. During her tenure at REACH, Simon received no complaints about her performance.

On October 17, 2016, Simon was involved in an incident with N.D., a REACH student. While in class, N.D. had been acting inappropriately and was asked to move into the hallway. In the hallway, N.D.'s behavior escalated. Simon and another employee restrained N.D. by holding him by each arm. They then attempted to walk him towards another classroom. As they were walking, N.D. reached down and grabbed Simon's groin, causing her to let go of N.D, who then dropped to the floor and kicked his legs out into a steel door that slammed against Simon's head.

Shortly after the incident, Simon went to the emergency room and was diagnosed

with a concussion. The next day, Simon was unable to return to work and emailed a report of the incident to Michele Baillies, the CESA 5 grants specialist and workers' compensation administrator. In the email, Simon recounted the incident with N.D., informing Baillies of her concussion diagnosis as follows: "I have a terrible headache which has moved to the back of my hea[d], typical for concussions. I also am still very dizzy today." (Simon Decl., Ex. A (dkt. #21-1).) That same day, Baillies informed Mike Koltes -- the CESA 5 director of business services -- that Simon had suffered a concussion. The following day, October 19, Simon provided CESA 5 with a note from her doctor that stated: "Patient unable to work due to an injury suffered on 10/17/16." (Stadler Decl., Ex. E (dkt. #15-5).) CESA 5 then placed Simon on workers' compensation leave, for which she would receive workers' compensation payments through November 22, 2016.

At that point, Simon did not request FMLA leave or otherwise discuss FMLA leave with anyone at CESA 5, nor did CESA 5 designate Simon's absence as FMLA leave. Instead, about two weeks later, Simon's doctor wrote a note indicating that Simon could return to work on light duty for half-days. CESA 5 accommodated these limitations, enabling Simon to return to work on November 4, 2016, to perform light duty, sedentary tasks at the CESA 5 offices. On November 21, CESA 5 moved Simon to Rusch Elementary School in the Portage School District for continued light duty work as a special education teacher. One day after this placement, Simon's doctor cleared her to resume "a full work schedule with no restrictions," effective November 24. Simon's placement at the Portage School District, however, remained unchanged.

Koltes stated that CESA 5 placed Simon in the Portage School District as "a

transition for Simon to get back to work from worker's compensation leave with students that did not have as severe of behavioral issues as the students served at REACH." (Koltes Decl. (dkt. #16) ¶ 40.) Simon disputes this, arguing that she was placed at Portage out of retaliation for her taking leave.

On December 8, 2016, Simon met with Koltes and Rebecca Johnson -- the CESA 5 director of special education. During this meeting, Simon "begged" to be returned to REACH Academy. Instead, Johnson informed Simon that her placement in the Portage School District would continue for the remainder of the 2016-2017 school year. Again, the parties dispute the reason for Simon's continued placement at Portage. Koltes said that he "took part in the decision to return Simon to the Portage School District assignment and one factor in that decision was a desire to bring Simon back into a less chaotic environment." (Koltes Decl. (dkt. #16) ¶ 40.) Koltes further stated that he was "concerned about Simon getting another concussion" (*id.*), and he concluded that "it would have been an unreasonable risk to place Simon back at REACH following her injury." (*Id.* ¶ 43.) Simon contends that CESA 5's placement decision was due to retaliatory animus. For the remainder of the school year, Simon worked as a special education teacher in the Portage School District.

The parties dispute the extent of Simon's responsibilities in her new position. Koltes claims that "[t]he teaching position at the Portage School District was very similar to the Lead Teacher position at REACH, except that Simon did not have to supervise paraprofessional employees." (Koltes Decl. (dkt. #16) ¶ 46.) In contrast, Simon enumerated many ways in which the two positions differed. Specifically, in her deposition

she testified that:

- she "no longer was able to participate in screenings, evaluations, IEP development";

- she "had no district staff responsibility and was not allowed to . . . communicate with parents about any students";

- at Portage, she did not "organize or facilitate program staff meetings" and was not even "allowed to be at district staff meetings" while "[a]t Reach [she] was the one that had to organize all my staff meetings for all [her] paraprofessionals";

- "lesson planning was not something she had a role in";

- she "was not allowed to do any assessments or testing with students in Portage"; and

- she "was not maintaining any records of enrollment, child counts or other requested records."

(Simon Dep. (dkt. #17) 12.)

Meanwhile, no one was hired to replace Simon at REACH Academy after her absence in October 2016. Instead, the lead teacher for COMAN -- Elizabeth Arnold -- filled in and served as lead teacher for both REACH and COMAN. CESA 5 determined that this combined position was successful, and in the spring of 2017, CESA 5 officially offered Arnold a contract for the combined REACH/COMAN position. Arnold has served as lead teacher for both programs since that time. After the REACH lead teacher position was eliminated, CESA 5 notified Simon that her contract for the next year would not be renewed for the 2017-2018 school year. After completing the 2016-2017 school year as a

CESA 5 employee, Simon was able to secure employment directly with the Portage School District for the following two school years at an annual salary of $49,000.

OPINION

Plaintiff claims that CESA 5 violated the FMLA by not (1) restoring Simon to her pre-leave position as REACH lead teacher, and (2) considering her for the REACH/COMAN combined lead teacher position or renewing her contract for the 2017-2018 school year. Plaintiff also maintains these claims apply under both FMLA interference and retaliation theories. Defendant argues that plaintiff has not advanced sufficient evidence to create a genuine dispute of material fact for any of her claims. Defendant further argues that because plaintiff has no remedy under the FMLA, judgment must be entered against her.

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts and draw all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

I. **FMLA Interference**

The central provision of the FMLA guarantees eligible employees twelve weeks of leave in a one-year period for certain enumerated reasons, including due to a serious health

condition that makes her unable to perform her job. 29 U.S.C. § 2612(a)(1). To prevail on an FMLA interference claim, a plaintiff must prove that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 993 (7th Cir. 2010). Defendant does not dispute the existence of the first three elements, arguing only that Simon did not provide sufficient notice that she was taking FMLA leave and that CESA 5 did not deny Simon any FMLA benefits. (Def.'s Br. (dkt. #12) 15-21.)

## A. Notice

When an employee intends to take FMLA leave based on an unforeseeable need, the employee has a duty to "provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). The notice should "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." § 825.303(b). The employee is not required to mention the FMLA, but "must specifically reference either the qualifying reason for leave or the need for FMLA leave." *Id.; see also Price v. City of Fort Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997) ("The FMLA does not require that an employee give notice of a desire to invoke the FMLA. Rather, it requires that the employee give notice of need for FMLA leave. This kind of notice is given when the employee requests leave for a covered reason."). The notice also need not be contained in one single communication; a court may consider multiple communications to determine whether the employer was given

adequate notice. *See Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006) (holding that plaintiff's declaration that he was "sick" and "wanted to go home" should be taken in the context of employer's knowledge of plaintiff's previous medical history when considering the adequacy of employee's notice under the FMLA). Finally, in some cases an employee does not even need to directly communicate notice to the employer if "circumstances provide the employer with sufficient notice of the need." *Id.* at 479. For example, "someone who breaks an arm obviously requires leave. It is enough under the FMLA if the employer knows of the employee's need for leave." *Byrne v. Avon Prod., Inc.*, 328 F.3d 379, 381-82 (7th Cir. 2003).

Here, plaintiff has presented overwhelming evidence of adequate notice to CESA 5 under the FMLA. First, Simon's injury was conspicuously incurred on the job around other CESA 5 employees, as was her decision to go to the emergency room. Second, by the next day, Simon emailed CESA 5's worker's compensation administrator Baillies, informing her of the incident and of her having been diagnosed with concussion. Third, this same information was next communicated to CESA 5's business services director Koltes the same day. Fourth and finally, just two days after the incident, Simon provided CESA 5 with a doctor's note specifically stating that she was unable to work due to an injury. Taken together, these circumstances could lead a reasonable factfinder to conclude that CESA 5 was on notice that the FMLA may apply to Simon's leave request.

While defendant argues that Simon was not only "placed on Worker's Compensation leave and received Worker's Compensation benefits," she "never mentioned or requested leave under the FMLA" (Def.'s Br. (dkt. #12) 16), Simon was not required

to do so. *See Price*, 117 F.3d at 1026. Moreover, that *CESA 5* designated Simon's absence as a worker's compensation leave and not FMLA leave is no defense. "[I]t is the *employer's* responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA leave." *Id.* (emphasis added). In sum, a reasonable factfinder could certainly conclude that Simon provided CESA 5 with adequate notice. Although not ripened at summary judgment, a case could be made for a directed verdict in plaintiff's favor on this element of her FMLA claims.

### B. Entitlement to FMLA Benefits

Defendant additionally argues that plaintiff's FMLA interference claim fails because CESA 5 did not deny Simon any FMLA-protected benefits. The FMLA provides a substantive right for most employees, including Simon, who take FMLA leave to either be restored to their pre-leave position or to be restored to an equivalent position.[2] 29 U.S.C. § 2614(a)(1). The Act further provides that this right "shall not be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." § 2614(a)(3)(B). "The right to reinstatement is therefore not absolute." *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 804 (7th Cir. 2001). Moreover, plaintiff has the burden to establish her entitlement to the benefit that she claims. *See Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1018 (7th Cir. 2000).

---

[2] The Act contains an exemption -- not applicable here -- for certain "highly compensated employees." *See* 29 U.S.C. § 2614(b).

Here, plaintiff asserts two interference claims. *First*, she argues that her post-leave placement in the Portage School District was *not* an equivalent position, and therefore the placement violated her right to reinstatement or to an equivalent position under 29 U.S.C. § 2614(a)(1). The Seventh Circuit has said that the "test for equivalence is strict." *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 977 (7th Cir. 2008). The FMLA provides that a job is "equivalent" if it has "equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B). The regulations further specify that an equivalent position "must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a). Indeed, this court has previously noted that a "loss of management responsibilities could be sufficient in itself to show that [a plaintiff] was not returned to an equivalent job." *Arrigo v. Link Stop, Inc.*, 975 F. Supp. 2d 976, 987 (W.D. Wis. 2013). Still, the equivalence requirement does not extend to "de minimis, intangible, or unmeasurable aspects of the job." 29 C.F.R. § 825.215(f).

As an initial matter, there is no dispute in the case that Simon's post-leave placement entailed equivalent benefits and pay as her pre-leave position at REACH Academy. Instead, the parties' dispute is over whether the terms and conditions were equivalent. Defendant contends that Simon served as a classroom teacher in both positions and held basically the same responsibilities. To the extent that the positions differed, defendant further argues, such differences were de minimis. Defendant points to business services director Koltes's declaration for the proposition that the two positions were "very similar . . . except that Simon did not have to supervise paraprofessional employees."

(Koltes Decl. (dkt. #16-12) ¶ 46.)

Plaintiff presents facts that paint a very different picture. As noted above in more detail, Simon testified to a number of specific, arguably material differences between the REACH lead teacher and the Portage School District special education teacher positions, including having no (1) ability "to participate in screenings, evaluations, IEP development," (2) "district staff responsibility" or authority "to communicate with parents about any students," (3) a role in lesson planning, "facilitating any meetings or information with any students," or "oversee[ing] any daily program operations," and (4) ability to "work with other staff to develop, modify and update curriculum." (Simon Dep. (dkt. #17) 11-12.) Viewing these disputed facts in the light most favorable to plaintiff as the non-moving party, a reasonable jury could find that Simon's post-leave position did not involve equivalent duties and responsibilities, and that those differences were not de minimis.

Plaintiff's *second* inference claim actually has two parts: that CESA 5 violated the FMLA in failing to renew Simon's contract for the 2017-2018 school year and in failing to consider her for the combined REACH/COMAN position. (Pl.'s Opp'n (dkt. #19) 24.) To establish either part of this interference claim, defendant argues plaintiff must demonstrate that her taking FMLA leave was a "motivating factor" in CESA 5's decision not to renew her contract. (Def.'s Br. (dkt. #12) 18.) However, this blurs plaintiff's interference claims with her retaliation claims. "The difference between a retaliation and interference theory is that the first 'requires proof of discriminatory or retaliatory *intent* while [an interference theory] requires only proof that the employer denied the employee

his or her *entitlements* under the Act.'" *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 443 (7th Cir. 2011) (quoting *Kauffman v. Federal Express Corp.* 426 F.3d 880, 884 (7th Cir. 2005)) (emphasis added but alterations in original). In contrast, as previously observed by this court, other circuits have understandably held "claims premised on termination that occurred some amount of time after leave are better analyzed as retaliation claims." *Nigh v. Sch. Dist. of Mellen*, 50 F. Supp. 3d 1034, 1052 (W.D. Wis. 2014) (citing *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)).

Accordingly, the court will reserve discussion of CESA 5's alleged motivation or intent to the proceeding analysis of plaintiff's retaliation claims and here simply ask whether CESA 5 denied Simon an entitlement under the FMLA. To prevail on her second interference claim plaintiff must prove that she was entitled under the FMLA to have her contract renewed for the 2017-2018 school year or, at least, to be considered for the combined REACH/COMAN lead teacher position. Alternating a mixture of evidence and argument in support of her claim, plaintiff points out that: Simon's pre-leave performance had been consistently good; argues that defendant's explanations for eliminating her former REACH lead teacher position were unconvincing; there is an absence of evidence showing that Simon could not have performed as well as Arnold in the combined REACH/COMAN position; and that CESA 5's business service director Koltes allegedly admitted that "*because* Simon had suffered a concussion and consequently needed time off" it "could *never* have placed Simon at REACH again." (Pl.'s Opp'n (dkt. #19) 23.)

As noted above, however, the FMLA provides a right to leave *and* a right to

reinstatement. *See* 29 U.S.C. §§ 2612(a), 2614(a). The act also specifically disclaims the creation of any additional rights "to which the employee would [not] have been entitled had the employee not taken the leave." *See* 28 U.S.C. § 2614(a)(3)(B). Here, none of plaintiff's arguments suggest that she was entitled under the FMLA (or otherwise) to have her annual employment contract renewed or to be considered for the combined REACH/COMAN position. *See Rice*, 209 F.3d at 1018 (A "plaintiff must establish, by a preponderance of the evidence, that he is entitled to the benefit that he claims."); *see also Silverman v. Bd. of Educ. of City of Chicago*, No. 08 C 2220, 2010 WL 3000187, at *13 (N.D. Ill. July 26, 2010) (non-renewal of contract was not FMLA interference as plaintiff did not demonstrate she was entitled to renewal under the FMLA); *Mimbs v. Spalding Cty. Sch. Dist.*, No. 317CV00032TCBRGV, 2018 WL 7348863, at *12 (N.D. Ga. Dec. 21, 2018) (rejecting FMLA interference claim where plaintiff did not demonstrate that non-renewal of contract denied her a benefit that she was entitled to under the FMLA). Therefore, whatever explanation plaintiff has for defendant's ill-motive or intent, she has failed to offer evidence that could show an *FMLA* entitlement to be considered for a newly created position or to automatic renewal, and the court must grant defendant's motion for summary judgment as to her second interference claim as well.

## II. Retaliation

Plaintiff additionally argues that CESA 5 retaliated against her for taking leave protected by the FMLA by reassigning her to the Portage School District, rather than returning Simon to her position at REACH, as well as by not renewing her contract or considering her for the combined REACH/COMAN position. The FMLA prohibits

employers from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). The Seventh Circuit has construed this provision as stating a cause of action for retaliation. *See Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 992 (7th Cir. 2010). To prevail on an FMLA retaliation claim, a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two. *Carter v. Chicago State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015).

While both parties present their arguments and evidence through the lens of the "direct" and "indirect" methods of proof (*see* Def.'s Br. (dkt. #12) 21-27; Pl.'s Opp'n (dkt. #19) 24-31), the Seventh Circuit has instructed district courts to "stop separating 'direct' from 'indirect' evidence." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Therefore, the court will instead "consider the evidence as a whole and ask whether a reasonable jury could draw an inference of retaliation." *King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017) (citing *Ortiz*, 834 F.3d at 764-66)).

Turning to the first element, plaintiff's position is that Simon's absence after her concussion qualified as "protected activity." Defendant argues that Simon's leave was not protected because she did not request FMLA leave, and CESA 5 did not consider her to be on FMLA leave. Defendant does not appear to suggest that Simon was ineligible for FMLA leave, only that it was not formally designated as such. As noted above, however, "it is the *employer's* responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA leave." *Price*, 117 F.3d at 1026 (emphasis added). More to the

14

point, as long as the employee gives adequate notice of her FMLA-qualifying condition, the act of taking FMLA-eligible leave qualifies as statutorily protected activity even if the employer does not designate it as such.[3]  For example, in *Burnett*, the Seventh Circuit held that an employee had engaged in a FMLA protected activity when he took leave for his serious medical condition providing sufficient notice of his condition to his employer despite (1) the employee never invoking the FMLA in his requests and (2) his employer never designating nor considering him to be on FMLA leave.  42 F.3d at 482.  Having presented sufficient evidence for a reasonable jury to conclude that she gave adequate notice of her FMLA-qualifying medical condition -- namely, her concussion -- to CESA 5 as already discussed in detail above, plaintiff's leave nevertheless qualifies as statutorily protected activity even though CESA 5 treated the leave as falling under workers' compensation rather than under the FMLA.

Regarding the second element, plaintiff argues that she suffered an adverse action when, after she returned from leave, CESA 5 placed her at the Portage School District rather than at her old position at REACH Academy and again when CESA 5 chose not to renew her contract for the next school year or to consider her for the REACH/COMAN lead teacher position.  To give rise to an FMLA retaliation claim, the adverse action must

---

[3] Defendant points to *Brown v. Colgate-Palmolive Co.*, 2006 WL 517684, at *17 (S.D. Ind. Mar. 2, 2006), for the proposition that "taking Worker's Compensation leave is not a protected activity under the FMLA."  (Def.'s Br. (dkt. #12) 23.)  At best, defendant misconstrues that court's actual ruling.  In *Brown*, the court stated that "filing a worker's compensation *claim* is not a protected activity" under the FMLA.  2006 WL 517684, at *17 (emphasis added).  Such a conclusion simply has no relationship to whether taking *leave* that simultaneously qualifies as worker's compensation leave and FMLA leave is not a protected activity.  Regardless, the case law cited above rejects defendant's proposed answer to that question.

be "materially" adverse. *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009). Materially adverse actions "include any actions that would dissuade a reasonable employee from exercising his rights under the FMLA." *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008) (citing *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)).

Defendant maintains that Simon's placement at the Portage School District was not a "materially adverse" action as the position was "substantially similar" to her old position and her pay and benefits were unaffected. (Def.'s Br. (dkt. #12) 24.) An employment action need not result in a reduction in pay or benefits to qualify as materially adverse. *See Breneisen*, 512 F.3d at 979. A transfer resulting in "significantly diminished material responsibilities" may in some circumstances rise to the level of a materially adverse action. *Crady v. Liberty Nat. Bank & Tr. Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993). Here, plaintiff again points to Simon's deposition testimony as proof that her post-leave placement "bore virtually no resemblance to her pre-leave position" as she was stripped "of her authority and her responsibilities." (Pl.'s Opp'n (dkt. #19) 29.) Viewed favorably, the facts presented by plaintiff could leave a jury to conclude that her diminished responsibilities were significant enough that such a placement would dissuade a reasonable employee from exercising her FMLA rights.

CESA 5's decision not to renew Simon's contract could also be found to be a materially adverse action. *See, e.g.*, *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 741 (7th Cir. 2011) (non-renewal of employment contract could be found to be materially adverse action); *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1068 (7th Cir. 2012) (same). And plaintiff's position that CESA 5 failed to consider her for the REACH/COMAN

position could be construed as a denial of a promotion or the opportunity for a promotion, which has been held to be a materially adverse action. *See, e.g.*, *Breneisen*, 512 F.3d at 979; *Atanus v. Perry*, 520 F.3d 662, 675 (7th Cir. 2008). Indeed, defendant offers no real argument on this latter point. Therefore, the court concludes that a reasonable factfinder could conclude that CESA 5's decision not to renew Simon's contract or consider her for the REACH/COMAN position were "materially adverse."

The third element requires plaintiff to demonstrate a causal connection between the protected activity and the adverse actions. Here, both parties assume that plaintiff need only prove that the protected conduct was a "motivating factor" in the CESA 5's decisions. However, in light of the U.S. Supreme Court's 2013 decision applying "but-for" causation to retaliation claims brought under Title VII, *see Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013), some courts have held that the "motivating factor" standard is no longer applicable to FMLA claims, *see, e.g.*, *Baird v. Progress Rail Mfg.*, No. 1:17-CV-3848-WTL-DML, 2019 WL 2210811, at *11 (S.D. Ind. May 21, 2019). In 2014, the Seventh Circuit declined to resolve the question of the applicability of *Nassar*'s holding to the FMLA, and since that time it has not had occasion to address the issue again. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 562 n. 3 (7th Cir. 2014) ("Our circuit has not addressed, and the parties have not briefed, whether but-for causation should apply to FMLA retaliation claims in light of *Gross* and *Nassar*. We need not resolve the question here, however, because Malin can avoid summary judgment on both claims even if but-for causation applies to her FMLA retaliation claim."). So, too, here, the question need not be resolved, as plaintiff has failed

to present sufficient evidence of retaliatory intent to survive summary judgment even under the more lenient "motivating factor" standard.

Defendant principally argues that plaintiff cannot establish causation because CESA 5 never understood Simon to be on FMLA leave. According to defendant, because plaintiff's claims require proof of *intent* to retaliate, that Simon's leave was not designated as FMLA leave means that CESA 5 did not have the requisite retaliatory intent. Once again, the court must reject defendant's "head-in-the-sand" defense. *See Price*, 117 F.3d at 1026 (defendant is responsible to "determine the applicability of the FMLA and to consider requested leave as FMLA leave"). Still, plaintiff bears the burden to demonstrate a causal connection between her exercise of leave *eligible* for FMLA protection and the alleged adverse actions.[4]

Plaintiff advances two pieces of evidence in support of her claim of causation. First, she points to CESA 5's director Koltes's deposition, during which the following exchange took place:

> Q: . . . by the time you received the doctor's letter saying she could return to full duty with no restrictions you had reached the conclusion that you would not be reassigning her to her lead educator position at REACH?
> . . .
> A: Yes.
> Q: On what did you base your conclusion that it would have been an unreasonable risk to return her back into the REACH program?
> A: Primarily it was around the concussion and also the students that are in REACH that exhibit those kind of behaviors that

---

[4] As previously alluded to, this interpretation is substantiated by a number of other Seventh Circuit cases permitting retaliation claims even where the employer did not understand the employee to be taking FMLA leave. *See, e.g. Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012); *Burnett*, 472 F.3d at 482.

are very severe and potentially -- you know, for a staff member
-- potentially severe to a staff member.
. . .
Q: Your conclusion that it would have been unreasonable risk
ever to place Sarah Simon back at REACH also meant that you
wouldn't ever assign her to COMAN; true?
A: True.

(Koltes Dep. (dkt. #22) 12-13.)

Certainly, this evidence establishes temporal proximity between Simon's protected conduct and CESA 5's adverse actions. In particular, Koltes's testimony shows that the decision not to return Simon to REACH and to not "ever" assign her to COMAN was determined at some point between the October 17, 2016, incident with N.D. and the November 22, 2016, doctor's note clearing Simon for full duty. In other words, less than four weeks after Simon began her leave of absence, CESA 5 made the decision regarding at least two of the allegedly adverse actions, and arguably all three. Although "suspicious timing alone rarely is sufficient to create a triable issue," close temporal proximity can, along with other evidence, support an inference of retaliatory intent. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006) (quoting *Moser v. Indiana Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005)).

Plaintiff also argues that Koltes's testimony is "direct proof" of retaliatory intent, but even viewing the facts in a light favorable to plaintiff, the deposition simply does not directly evince retaliatory intent. Although Koltes does indicate that he determined that it was an "unreasonable risk" to return Simon to REACH because of her concussion and concerns about her safety, this does not show or imply that Simon's decision to take *leave* was a causal factor in the decisions. *See Ryan v. Pace Suburban Bus Div. of Reg'l Transp.*

*Auth.*, 837 F. Supp. 2d 834, 838 (N.D. Ill. 2011) (noting that evidence that plaintiff was terminated because of his disability did not support FMLA retaliation claim).

Plaintiff's second approach to proving causation relies upon the *McDonnell Douglas* burden shifting framework. Although *Ortiz* instructed courts to stop separating evidence into "direct" and "indirect" piles, that decision did not overturn *McDonnell Douglas*. *See* 834 F.3d at 766 ("Today's decision does not concern *McDonnell Douglas* or any other burden-shifting framework . . . ."). The *McDonnell Douglas* framework first requires plaintiff to establish a prima facie case "that after [engaging in protected conduct] only he, and not any similarly situated employee who did not [engage in protected conduct], was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004) (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003)). Here, plaintiff has offered sufficient evidence to make such a prima facie case. Specifically, plaintiff first points to the fact that there had been no complaints about her performance during her tenure at REACH. Next, she argues that Elizabeth Arnold was a similarly situated employee -- both were alternative education lead teachers employed by CESA 5 at the same facility. Finally, she demonstrates that Arnold was not subjected to the same adverse actions as Simon: while Simon was transferred to the Portage School District, did not have her contract renewed, and was not considered for the combined REACH/COMAN lead teacher position, Arnold remained in her position, had her contract renewed by CESA 5, and was considered and ultimately hired for the REACH/COMAN lead teacher position.

The next step in the burden shifting method allows defendant to present evidence of a "noninvidious reason for the adverse action." *Buie*, 366 F.3d at 503 (quoting *Rogers*, 320 F.3d at 754). Here, defendant says that it had "multiple legitimate considerations" for its actions. First, regarding Simon's reassignment to the Portage School District, defendant points to director Koltes's declaration that he placed Simon at Portage to bring her "back into a less chaotic environment," because (1) he was "concerned about Simon getting another concussion," and (2) he considered it an "unreasonable risk" to place Simon back at REACH. (Koltes Decl. (dkt. #16) ¶¶ 40, 43.) Second, regarding the decision not to renew Simon's contract for the following school year, defendant maintains that it did so not because Simon took a leave of absence, but because it had decided to eliminate the REACH lead teacher position in an effort to reduce costs and streamline instruction and communication. (*See id.* ¶¶ 54-55.) Finally, defendant argues that it did not consider Simon for the new combined REACH/COMAN lead teacher position because it had determined that Elizabeth Arnold should fill that role. Specifically, Koltes testified that Arnold was chosen based on the success of having her serve as the lead teacher for both COMAN and REACH during the 2016-2017 school year. (*Id.* ¶ 53.) Also, Koltes observed that Arnold had "more years of experience than Simon and her performance was deemed more effective than Simon's." (*Id.* ¶ 54.) Therefore, defendant has met its burden of presenting "noninvidious reasons" for its actions.

The final step under *McDonell Douglas* allows plaintiff to rebut defendant's proffered reasons by showing that they are actually pretext for discrimination. "Pretext 'involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a]

lie, specifically a phony reason for some action.'" *Tibbs v. Admin. Office of the Illinois Courts*, 860 F.3d 502, 506 (7th Cir. 2017) (quoting *Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690, 698 (7th Cir. 2017)). Further, "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *King v. Preferred Tech. Grp.*, 166 F.3d 887, 893 (7th Cir. 1999) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

To establish pretext, plaintiff first presents evidence regarding Simon's qualifications for the REACH/COMAN position, including her "higher educational attainment than Arnold" and "administrator-level licensure that Arnold did not have." (Pl.'s Opp'n (dkt. #19) 27.) However, contrasting evidence of Simon's educational attainment with Arnold's "does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 404 (7th Cir. 2008) (quoting *Mlynczak v. Bodman*, 442 F.3d 1050, 1059-60 (7th Cir. 2006)). Here, Simon alleges that she had more education and licenses, but Arnold had more years of experience and, according to CESA 5, "more effective" performance. At bottoms, these differences are not "so favorable" that a reasonable jury could find pretext.

Plaintiff further notes that: "CESA 5 determined not to return Simon to REACH, permanently, before she had even come back to unrestricted work following leave"; that "CESA 5 never gave Simon a chance to try out for the dual Lead Teacher position, yet allowed Arnold to do so from late October 2016 through the 2016-2017 school year"; and

that "[o]ne of CESA 5's key decision-makers admits to having never seen any of Simon's performance reviews." (Pl.'s Opp'n (dkt. #19) 27.) However, none of these facts support a reasonable inference that CESA 5's proffered reasons were lies or pretextual.

The court recognizes that the facts in this case do suggest a causal relationship between Simon's leave of absence and the restructuring of the REACH/COMAN program. Whether preconceived or not, Simon's leave provided CESA 5 with an opportunity to assess whether those programs could operate effectively under the direction of a single lead teacher. An arguably analogous situation was presented in *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 806 (7th Cir. 2001). In that case, the plaintiff's maternity leave allowed her employer to discover certain deficiencies in her work. *Id.* The court concluded that "[t]he fact that the leave permitted the employer to discover the problems cannot logically be a bar to the employer's ability to fire the deficient employee." *Id.* Similarly, in this case, Simon's leave of absence allowed CESA 5 to discover that Simon's position as REACH lead teacher was dispensable. The FMLA does not require an employer to ignore salient business information even if it acquired only because an employee takes medical leave. *See Dale v. Chi. Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions.").

Considering the sparseness of plaintiff's evidence of CESA 5's alleged retaliatory intent as a whole, which really comes down to temporal proximity, plaintiff has presented insufficient evidence for a reasonable jury to find in her favor even under the lower "motivating factor" standard. Although plaintiff was able to establish a prima facie case

by comparing herself to Arnold, she was also unable to convincingly show that CESA 5's stated reasons for treating the two women differently were pretextual. If anything, the opposite is true on this record. In the end, "mere temporal proximity is not enough to establish a genuine issue of material fact." *Tomanovich*, 457 F.3d at 665. Because plaintiff has not come forward with sufficient evidence for a reasonable jury to find that Simon's leave was a "motivating factor" in CESA 5's allegedly adverse actions, the court will grant summary judgment in favor of defendant as to plaintiff's retaliation claims.

## III. Relief under the FMLA

The final, and potentially dispositive, argument raised by defendant is that plaintiff's claims fail because she has not adequately demonstrated entitlement to a remedy under the FMLA. Plaintiff does not attempt to argue that she is owed monetary damages,[5] instead contending that she is entitled to the equitable remedy of reinstatement. Defendant counters that plaintiff has failed to "provide[] any meaningful argument to carry her burden of proving that reinstatement is feasible or warranted." (Def.'s Reply (dkt. #25) 5.)

---

[5] Nor could she, since it is undisputed that while out on worker's compensation leave, Simon received worker's compensation payments, and the FMLA only entitles employees to twelve weeks of *unpaid* leave during a one-year period. *See* 29 U.S.C. § 2612(a)(1); *Dotson v. BRP U.S. Inc.*, 520 F.3d 703, 708 (7th Cir. 2008) ("The FMLA entitles eligible employees to up to twelve weeks of unpaid leave per year . . . ."). When Simon returned to work in November 2016, she received the same salary and benefits for the remainder of her contract. Finally, Simon admits that her salary for the 2017-2018 school year at the Portage School District was higher than what she had previously been paid at CESA 5, and all benefits were comparable if not better than what she had received at CESA 5. It is therefore clear that Simon did not suffer monetary damages as a result of any alleged FMLA violation.

Remedies available under the FMLA include (1) compensatory damages equal to the amount of wages, salary, employment benefits, or other compensation the employee was denied or lost and (2) "appropriate" equitable relief, including reinstatement. 29 U.S.C. § 2617(a)(1). Damages for emotional distress or punitive damages are not contemplated by the Act and thus are not available. *See Arrigo v. Link*, 836 F.3d 787, 798 (7th Cir. 2016) ("FMLA damages don't include emotional distress and punitive damages . . . .").

Here, plaintiff's only requested equitable relief is "reinstatement to [her] pre-leave position" (Pl.'s Opp'n (dkt. #19) 12), which no longer exists, having been successfully combined into a REACH/COMAN lead teacher position after the 2016-2017 school year. Arnold was then chosen to fill the new combined position, one she was already effectively doing anyway, and she still serves in that capacity. Given these circumstances, plaintiff's reinstatement demand would appear to require either that the court order CESA 5 to bring back the separate REACH lead teacher position and reinstate Simon into that role or order CESA 5 to replace Arnold with Simon as the combined REACH/COMAN teacher, neither of which appearing particularly "appropriate" on their face.

Reinstatement is often said to be the "preferred remedy," but "it is not always appropriate." *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1141 (7th Cir. 1994); *see also Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1045 (7th Cir. 1994); *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1370 (7th Cir. 1992). "The court has discretion to grant or deny reinstatement and it may consider a number of factors in exercising its discretion, including hostility in the employment relationship and the lack of an available

position to which to reinstate the plaintiff." *Downes*, 41 F.3d at 1141. That an employer has no current vacancies and reinstatement would "bump" an innocent employee may be factors in a court's reinstatement determination. *See Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir. 1995). Moreover, a plaintiff's gainful employment since the employer's unlawful act may factor against a reinstatement order, particularly if her current pay and benefits exceed those in the past position. *See Sheils v. Gatehouse Media, Inc.*, No. 12 CV 2766, 2015 WL 6501203, at *11 (N.D. Ill. Oct. 27, 2015) ("[T]he fact that [plaintiff] has for the past three years been gainfully employed in her field of work at a pay greater than one of the positions she sought at [her former employer] weighs in favor of finding that reinstatement is not appropriate in this case.") (citing *McKnight*, 973 F.2d at 1372)).

In response to defendant's argument against such equitable relief, plaintiff does not present specific facts regarding the appropriateness of a reinstatement order. Instead, she reiterates her arguments regarding CESA 5's liability then concludes that "there is a genuine issue of material fact whether Simon is entitled to reinstatement or some other equitable relief" (although plaintiff does not at any point elaborate on what this "other" equitable relief might be). (Pl.'s Opp'n (dkt. #19) 13.) Defendant argues that plaintiff has not adequately demonstrated that reinstatement or any other remedy is appropriate and urges the court to grant judgment in its favor as a result. In support, defendant cites to *Cianci v. Pettibone Corp.*, 152 F.3d 723, 729 (7th Cir. 1998), holding that summary judgment on behalf of the defendant was proper where the plaintiff "failed to come forth with any evidence that she has a remedy under the FMLA." In that case, however, the

plaintiff did not request equitable relief, and the record contained no support for plaintiff's alleged monetary damages. *See id.*

Here, by contrast, plaintiff *has* requested equitable relief, even if failing to demonstrate on the current record what that remedy would be. Nevertheless, the court is reluctant to grant summary judgment without further input from the parties. Although summary judgment is generally the "put up or shut up" moment in a lawsuit, *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), it is not clear that plaintiff was required to present evidence to support its claim for equitable relief at this stage. *See Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1141 (7th Cir. 1994) ("While we will reverse an award of front pay when there is no evidence in the record upon which to predicate such an award . . . there is nothing in the cases to suggest that such evidence must be presented at trial, so long as the evidence is presented to the district court at some point. . . . As such, the determination of front pay is entrusted to the trial court's sound discretion."). Therefore, the court will order briefing to ascertain whether any remedy is available to plaintiff under the FLMA. *See Sons v. Henry Cty.*, No. 1:05CV0516 DFHTAB, 2006 WL 3135150, at *1 (S.D. Ind. Oct. 31, 2006) (ordering further briefing where plaintiff alleging FMLA violations had not, at summary judgment, provided evidence as to his compensable loss).

ORDER

IT IS ORDERED that:

1) Defendant's motion for summary judgment (dkt. #11) is GRANTED IN PART and DENIED IN PART.

2) Plaintiff is instructed by Friday, January 10, 2020, to submit any legal or factual support for her claimed equitable or non-equitable remedy or remedies should she prevail on her remaining claim of interference with her reinstatement under the FMLA in the form of a written proffer, brief or other submission.

3) Defendant may have until Friday, January 17, 2020, to respond.

4) Defendant's motion to reschedule trial (dkt. #26) is DENIED AS MOOT.

Entered this 30th day of December, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge