IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SARAH M. SIMON,

                Plaintiff,            OPINION AND ORDER

v.

                                         18-cv-909-wmc

COOPERATIVE EDUCATINOAL
SERVICE AGENCY #5,

                Defendant.

In this civil action, plaintiff Sarah Simon claimed that her former employer, Cooperative Educational Service Agency #5 ("CESA 5"), unlawfully interfered with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and retaliated against her for exercising those rights. At summary judgment, the court concluded that plaintiff had failed to offer sufficient evidence of retaliation or interference based on CESA 5's decision not to renew her contract of employment for the 2017-2018 school year or consider her for a new position, combined her old position with other, substantial duties. (Dkt. #42.) At the same time, the court found that material issues of disputed fact remained as to CESA 5's possible liability for failing to return plaintiff to an equivalent position following her return from valid FMLA leave, as well as what remedy, if any, was available to plaintiff should CESA 5 be found liable.

Following a bench trial and additional arguments by the parties, the court now finds that CESA 5 violated the FMLA by failing to return plaintiff to an equivalent position after her FMLA leave. As the court stated at trial, and reiterates here, it is clear that plaintiff was wronged: after her FMLA leave, CESA 5 not only refused to return her to her previous

position, but instead parked her in a backwater position with materially fewer responsibilities until her contract ran out. Simon deserved better, and the law demanded better. Notwithstanding this finding of liability, however, plaintiff has not shown that there exists a remedy under the FMLA. In particular, having disclaimed a right to monetary relief, neither of plaintiff's requests for equitable relief are available under the circumstances here. Accordingly, while the court finds that CESA 5 violated the FMLA and will enter declaratory judgment as also requested by plaintiff, no additional relief will be ordered, although plaintiff may move for an award of attorney's fees under 29 U.S.C. § 2617(a)(3).

## FINDINGS OF FACT[1]

Defendant CESA 5 is a governmental entity based in Portage, Wisconsin, that provides services to some 35 surrounding public school districts. In July of 2014, plaintiff Sarah Simon was hired by CESA 5 as an "alternative program lead teacher" at REACH Academy, a school for elementary students with emotional and/or behavioral disabilities. REACH Academy provides a "seclusion classroom" setting, offering a specialized program in which students are not only pulled from their regular education classroom, they are pulled out of their home districts and placed in an alternative and separate classroom.

In this position, Simon performed all the normal duties expected of a classroom teacher, including teaching the educational curriculum to her assigned students. She also

---

[1] A substantially more detailed set of facts are laid out in the court's summary judgment decision. (Dkt. #42.) The following is a summary of facts necessary to resolve the remaining issues before the court.

2

had two, and sometimes three, paraprofessionals working under her. Simon organized and facilitated weekly staff meetings with these paraprofessionals, during which they discussed incidents from the previous week and planned for the upcoming week. A related aspect of her role was developing and coordinating the integrated education plans ("IEPs") of her special education students. She would coordinate with each student's home school district to determine the student's present level of academic and functional abilities, and their goals. The home school district would provide the relevant documentation, and Simon would then run the IEP meetings. Of course, once the IEPs were developed and put in place, Simon had to follow the goals and plan included in the IEP.

In addition to IEPs, Simon regularly communicated with students' home school districts on various other matters. Any time there was a behavior incident, she would report it to the home district. She would also communicate good news in an attempt to stay connected with everyone involved with the child and to balance negative messages with positive ones. Simon similarly worked with various individuals and agencies outside of the school. In particular, because she had several students who were assigned social workers, Simon worked closely with them to make sure the students' support systems were combined and coordinated. Simon also worked with the Columbia County Sheriff's Department to the extent that law enforcement should be needed at the building. In doing so, Simon attended meetings at the sheriff's department to discuss the students in the program, their needs, and how best to support them if law enforcement were called.

Simon received a generally positive performance review after her first year, and CESA 5 renewed her contract for the 2015-16 school year, and then again for the 2016-17 school year. Her salary for the 2016-17 year was $48,554.35.

On October 17, 2016, however, Simon suffered a concussion during a physical altercation with a REACH student, for which she had to leave work to go to the emergency room. The following day, Simon was unable to return to work due to ongoing symptoms from her concussion, and she emailed Michele Baillies, a CESA 5 human resources employee, about the incident and her concussion diagnosis. That same day Mike Koltes -- the CESA 5 director of business services -- also learned about Simon's concussion. Koltes testified that he knew a concussion qualified as a serious health condition under the FMLA at the time he learned of Simon's injury, although he did not offer her FMLA leave.

On October 19, 2016, Simon provided Bailies and other CESA 5 administrators with a formal note from her doctor stating that she was unable to work due to her injury. Simon was then placed on workers' compensation leave. By October 31, Simon's doctor permitted her to return to part-time, light duty work; and on November 24, she was cleared to return to a full work schedule with no restrictions. However, CESA 5 did not permit Simon to return to her pre-leave position as a lead teacher at REACH Academy. Instead, at some point before November 24, its business director Koltes and others had determined returning Simon to her position at REACH would be an "unreasonable risk." As a result, Simon was placed as a special education teacher at Rusch Elementary School in the Portage School District. Koltes also informed Simon that she would not be returned to her position

at REACH; rather, she would stay at the Portage School District for the remainder of the school year, although her salary and benefits were unchanged.

For the remainder of the fall 2016 semester, Simon continued to work at Rusch Elementary School. Then, after the winter break, in January 2017 Simon was assigned to two different buildings withing the Portage School District -- Rusch and Woodridge Primary School. In this new role, Simon supported her students' case managers. Every morning at Woodridge, Simon was given a schedule of kids to support in a classroom or in a resource room, and every afternoon at Rusch, she was assigned a single student to support the remainder of the day. Simon's new role did not involve lesson planning, evaluation, reporting, or direct education, nor was she permitted to communicate with students' families, as all communication had to go through each child's case manager. Simon also did not have paraprofessionals at her disposal or significant input in developing students' IEPs. Rather, she was simply expected to follow them. She also attended only one IEP meeting in her new role, and even then, only because a student was being considered for REACH, and they wanted her opinion due to her familiarity with the program. Indeed, Simon described her participation at that meeting as "pretty much a paraprofessional role."

For all these reasons, Simon convincingly testified that her new position as a special education teacher at the Portage School District did not match with the formal written job description. In particular, contrary to the written description, Simon explained that she was not involved with screenings, evaluations, meetings, IEP development, maintenance of enrollment records, communication with parents, creation of lesson plans, curriculum development, or professional development activities.

5

In February of 2017, Simon was further informed that her old position at REACH was being eliminated, and in April of 2017 she received a final notice of contract-nonrenewal from CESA 5, at which point she began looking for jobs for the next year. Although she saw that CESA 5 had two special education teaching positions available, she decided not to apply for them due to her understandable level of distrust with CESA 5 at the time. Instead, she applied for, and was ultimately hired to work full time at Woodridge Primary School as a special education teacher, where she continues to work through the date of the trial.

In her current position, Simon has a caseload of twelve kindergarten and first-grade kids, as well as several, assisting paraprofessionals at her disposal. Presently, Simon also has more significant responsibilities then she did when she first joined the Portage School District -- for example, she now engages in lesson planning and is responsible for the creation and maintenance of her students' IEPs. Still, Simon was clear that she viewed this position as a "step down" from her former job at REACH Academy. In particular, she testified that her "passion" is working with kids with special needs and emotional behavior disorders, but because of the young age of her current students, such emotional and behavioral issues are generally not present or not yet developed.

Meanwhile, no one was hired to replace Simon at REACH Academy after her absence in October 2016. Instead, Elizabeth Arnold, the lead teacher for a related program, the "Columbia Marquette Adolescent Needs School ("COMAN"), filled in and served as lead teacher for both schools. COMAN is located in the same building as REACH and serves middle and high school students with similar emotional and/or behavior disabilities

as those at REACH. After determining that combining the positions was successful, CESA 5 officially combined the REACH/COMAN position in the spring of 2017, and offered Arnold a contract for the position. In particular, Koltes received feedback that with the combined position there was a much smoother work flow for the entire structure of the programs and that student growth was greater. Arnold has served as the lead teacher for both programs since that time.

In addition to the other services provided public school districts in its area, CESA 5 now operates a total of seven, alternative education programs. As of the date of the trial, there were no vacancies in any of their teaching staff for these programs, although on average a teacher in one of these programs is replaced every couple years.

OPINION

I. Liability for Interference

The stated purpose of the FMLA is, *inter alia*, "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b). In accordance with this goal, the FMLA entitles any eligible employee to twelve weeks of leave in a one-year period if suffering from a serious health condition that renders her unable to perform her job. 29 U.S.C. § 2612(a)(D). Moreover, it is unlawful for an employer to interfere with an employee's attempt to exercise her rights under the FMLA. 29 U.S.C. § 2615(a)(1). To prevail on an FMLA interference claim, a plaintiff must prove that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to

take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 993 (7th Cir. 2010). Defendant does not dispute the existence of the first three elements.

As to the notice element, an employee has a duty to "provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). The notice should "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request," and the employee "must specifically reference either the qualifying reason for leave or the need for FMLA leave." § 825.303(b). Importantly, however, "the employee need not expressly assert rights under the FMLA or even mention the FMLA." *Id.* As the Seventh Circuit has explained, the "regulations repeatedly emphasize that it is the *employer's* responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA leave." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997) (emphasis added). The notice also need not be contained in one single communication; a court may consider multiple communications to determine whether the employer was given adequate notice. *See Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006) (holding that plaintiff's declaration that he was "sick" and "wanted to go home" should be taken in the context of employer's knowledge of plaintiff's previous medical history when considering the adequacy of employee's notice under the FMLA).

For this reason, the court found at summary judgment that plaintiff had "presented overwhelming evidence of adequate notice to CESA 5 under the FMLA," although the court did not definitively resolve the issue of notice as only defendant moved for summary

judgment. (12/30/19 Op. & Order (dkt. #42) 8-9.) With the issue now ripened at trial, the court finds that plaintiff met her burden of providing adequate notice under the FMLA. In particular, plaintiff has shown that Bailies and Koltes were informed just one day after her injury of both Simon's concussion and her inability to return to work. One day later (and only two days after her injury), Simon further presented administrators at CESA 5 with a doctor's note confirming that she was unable to work due to her concussion. She was then placed on workers' compensation leave, but inexplicably not on FMLA leave. At minimum, therefore, Simon provided prompt and sufficient information for CESA 5 to determine that the FMLA might apply to her leave request. Accordingly, she has satisfied this fourth element.

The final element of plaintiff's claim is the denial of FMLA-protected benefits. Specifically, the Act states that eligible employees who take FMLA leave:

> shall be entitled, on return from such leave --
> (A) to be restored by the employer to the position of employment held by the employee when the leave commenced;
> *or*
> (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1) (emphasis added). There is no dispute that plaintiff was not restored to her post-leave position as a lead teacher at REACH Academy. Therefore, the remaining question is whether Simon's placement as a special education teacher in the Portage School District was an equivalent position.

"The test for equivalence is strict." *Breneisen v. Motorola, Inc.,* 512 F.3d 972, 977 (7th Cir. 2008). Under the terms of the FMLA quoted above, a job is "equivalent" if it

9

has "equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B). The regulations further specify that an equivalent position "must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a). Even if provided the same salary and benefits, therefore, the Seventh Circuit has held that a new position with "less prestige and visibility" and different responsibilities is still not an "equivalent" position. *Breneisen*, 512 F.3d at 977. Similarly, this court has explained that a "loss of management responsibilities could be sufficient in itself to show that [a plaintiff] was not returned to an equivalent job." *Arrigo v. Link Stop, Inc.*, 975 F. Supp. 2d 976, 987 (W.D. Wis. 2013). Still, the equivalence requirement does not extend to "de minimis, intangible, or unmeasurable aspects of the job." 29 C.F.R. § 825.215(f).

As discussed in detail in the findings of fact above, Simon's post-leave placement at the Portage School District was simply not an equivalent position. It involved significantly less responsibility, independence, discretion, and management of others. These differences were far more than de minimis, placing her in a position more akin to a paraprofessional, rather than the teaching and key administrative roles she previously held as REACH Academy's lead teacher. Thus, although her salary and benefits remained the same, the significant difference in the "terms and conditions" of Simon's employment rendered her post-leave job *not* equivalent under the FMLA.[2]

---

[2] The court acknowledges that, "if an employee's position is eliminated while he is on FMLA leave for reasons unrelated to the taking of leave, he has no right to reinstatement." *Breneisen*, 512 F.3d at 978. However, where an employer had no business justification for eliminating the absent

**II. Remedy**

Having concluded that CESA 5 violated the FMLA, however, the court is confronted with the far more difficult question of an appropriate remedy. At the outset, the court will grant plaintiff's request for a declaration that defendant violated the FMLA when it refused to return her to her previous or an equivalent position after her leave. (*See* Compl. (dkt. #1) 8.)

The FMLA does not provide for monetary damages other than those expressly described in the statute itself, and plaintiff does not otherwise argue that she is owed monetary damages.[3] (*See* dkt. #19, 49, 58.) Instead, plaintiff has proposed two possible

---

employee's position or redistributing his responsibilities apart from a need to "work through" the employee's leave, he is entitled to reinstatement. *Id.* Here, the position of REACH Lead Teacher was not formally eliminated until the spring of 2017 -- months after Simon returned from her leave -- when it was combined with the COMAN Lead Teacher position. And regardless, Simon has shown that the REACH Lead Teacher position would not have been eliminated (or rather, her duties would not have been distributed to Arnold, the COMAN Lead Teacher) if she had not taken leave, as the only reason for the change was a response to Simon's leave.

[3] Monetary damages available under the FMLA are: compensatory damages equal to the amount of wages, salary, employment benefits, or other compensation the employee was denied or lost; any actual monetary losses sustained by the employee as a direct result of the violation; interest; and additional liquidated damages. 29 U.S.C. § 2617(a)(1). Although this court would have ordered at least nominal damages as a matter of equity in light of the injury done by defendants in placing her in essentially a teacher's aid position after returning from FMLA leave and a lead teacher role, the general weight of authority cautions against such an award. *E.g.*, *Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1277-78 (10th Cir. 2001) ("Because nominal damages are not included in the FMLA's list of recoverable damages, nor can any of the listed damages be reasonably construed to include nominal damages, Congress must not have intended nominal damages to be recoverable under the FMLA."); *Montgomery v. Maryland*, 72 F. App'x 17, 19 (4th Cir. 2003) ("emotional distress [damages] . . . along with nominal and consequential damages, [are] not covered under the [FMLA]"); *Spurlock v. Postmaster General*, 19 F. App'x 338, 340 (6th Cir. 2001) ("Under the FMLA, nominal damages may not be awarded."); *Colburn v. Parker Hannifin/Nichols Portland Div.*, 355 F. Supp. 2d 566, 568 (D. Me. 2005) *aff'd* 429 F.3d 325 (1st Cir. 2005) ("no nominal or consequential damages are available" under the FMLA); *Ehlerding v. Am. Mattress & Upholstery, Inc.*, 208 F. Supp. 3d 944, 953 (N.D. Ind. 2016) ("[I]t is clear (and Plaintiff concedes as much) that punitive damages, nominal damages, and damages for emotional distress are not available under the FMLA."); *Webb v. Cty. of Trinity*, 734 F. Supp. 2d 1018, 1031 (E.D. Cal. 2010) (the FMLA

remedies: (1) instatement to the next position available that fits her qualifications and is equivalent to the position she held at the time her claim accrued; or (2) an order requiring CESA 5 to train its administrative personnel in employers' obligations and employees' rights under the FMLA.  (*See* dkt. #49, 58.)  In contrast, defendant maintains that *no* relief is appropriate.  Plaintiff bears the burden of establishing that her requested remedy is appropriate*.  Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1018 (7th Cir. 2000).

As a general principle, "[e]quity suffers not a right to be without a remedy." *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1879 (2011).  Moreover, as plaintiff points out, the FMLA provides that an employer who violates the Act shall be liable "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion."  29 U.S.C. § 2617(a)(1)(B).  However, there is no "right" to equitable remedies, and a "plaintiff's claim to such a remedy may have to yield to competing considerations."  *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir. 1995).

---

does not allow for "recovery of nominal, punitive, [or] non-economic damages"); *Coleman v. Potomac Elec. Power Co.*, 281 F. Supp. 2d 250, 254 (D.D.C. 2003) ("nominal damages, or damages for emotional distress-are not recoverable" under the FMLA); *Tuhey v. Illinois Tool Works, Inc.*, No. 17 C 3313, 2017 WL 3278941, at *2 (N.D. Ill. Aug. 2, 2017) ("The remedies available under the FMLA do not include . . . nominal damages."). Although the Act does authorize "appropriate" equitable relief, 29 U.S.C. § 2617(a)(1)(B), the Seventh Circuit has also held in the Title VII context (before Title VII was amended by Congress to permit damages) that nominal damages may not be awarded as a form of equitable relief. *Bohen v. City of E. Chicago, Ind.*, 799 F.2d 1180, 1184 (7th Cir. 1986); *but see Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 873 (9th Cir. 2017) (holding that the Americans with Disabilities Act, 42 U.S.C. § 12203, "authorizes courts to award nominal damages as equitable relief when complete justice requires"). Moreover, plaintiff never specifically requested nominal damages. *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 60 (1997) (criticizing Ninth Circuit for extracting a nominal damages claim to save a case from mootness where complaint asserted only a "general prayer for relief"). For all these reasons, the court will not enter a nominal damage award.

Here, defendant argues that plaintiff is unable to show that she was "prejudiced" by the alleged FMLA violation and so she is not entitled to relief. (Def.'s Br. (dkt. #51) 2-4.) Specifically, since "[p]laintiff agrees that her wages and compensation were not adversely affected by her assignment to the Portage School District in November 2016," defendant asks, "what is the harm that Plaintiff suffered?" and responds that "[t]he simple answer is none." (*Id.* at 3.)

The principle that a plaintiff must show prejudice to recover under the FMLA was set down by the U.S. Supreme Court in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002). In that case, the Court considered whether an employer who provided plaintiff with thirty weeks of leave was required to provide her with an additional twelve weeks because the employer did not designate the initial leave as FMLA leave. *Id*. at 88-89. The Court concluded that no remedy was available because the employer's failure to provide notice did not prejudice the employee's FMLA right to take twelve weeks of leave. *Id.* at 89.

Here, however, Simon has both alleged and proven prejudice: because of CESA 5's failure to reinstate her to pre-leave or an equivalent position, she had to work at a job that was below her professional capacity and involved fewer and substantially less meaningful responsibilities than her pre-leave position. The holding in *Ragsdale* was not, as defendant appears to suggest, that a plaintiff must show some kind of *monetary* loss; rather, it stands for the proposition that to state an FMLA claim, a plaintiff must show a "real impairment of [her] rights." *Ragsdale*, 535 U.S. at 90. In *Ragsdale*, the employer's inadequate notice did not result in a "real impairment," since plaintiff actually received *thirty* weeks of leave,

13

rather than the twelve the Act requires. *Id.* In contrast, here plaintiff's right to be reinstated in her pre-leave or an equivalent position *was* impaired after being placed in a decidedly inferior position to the one held before taking FMLA leave. In sum, plaintiff sufficiently alleged and proved prejudice, and her interference claim is not barred from seeking FMLA relief under *Ragsdale*. *See also Evans v. Books-A-Million*, 762 F.3d 1288, 1296 (11th Cir. 2014) ("The Supreme Court in *Ragsdale* did not suggest, much less conclude, that 'prejudice' in the FMLA context is synonymous with 'legal damages.'").

Defendant additionally argues that "[p]laintiff's claim for equitable relief relates to a finite period of time that has come and gone (November 2016 to June 2017)." (Def.'s Br. (dkt. #51) 5.) Since Simon's employment contract with CESA 5 ended in June 2017, defendant suggests that it is no longer possible for the court to fashion "make whole" relief. (*Id.*) Defendant's argument is based on the premise that equitable relief should place a plaintiff in the same -- not in a better -- position than she would have been in had the violation not occurred. *See Harper v. Godfrey Co.*, 45 F.3d 143, 149 (7th Cir. 1995). While any equitable remedy should be tailored to fit the injury suffered, *Ragsdale*, 535 U.S. at 89, courts are often confronted with changed circumstances that make it difficult, if not impossible, to place a plaintiff in the exact same position. *E.g.*, *Traxler v. Multnomah Cty.*, 596 F.3d 1007, 1012 (9th Cir. 2010) (front pay "as an alternative to reinstatement" is an available equitable remedy under the FMLA where reinstatement would not be appropriate).

Thus, the question remains as to the appropriateness of plaintiff's requested relief on the specific facts of *this* case. As to plaintiff's request for instatement, factors to consider

14

are: (1) the effect on innocent employees who may be "bumped" to accommodate the plaintiff's instatement or reinstatement, *Doll v. Brown*, 75 F.3d 1200, 1205 (7th Cir. 1996); (2) administrative costs, including the time and money of litigants and judges devoted to administering a continuing remedy, *Avitia*, 49 F.3d at 1231; (3) reduction in enterprise's productivity caused by "locking parties into an unsatisfactory employment relation," *id.*; (4) the relationship between the employer and plaintiff and whether the relationship was acrimonious, *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1368 (7th Cir. 1992); and (5) whether the plaintiff is gainfully employed in her field of work at comparable level of pay, *Sheils v. Gatehouse Media, Inc.,* No. 12 CV 2766, 2015 WL 6501203, at *11 (N.D. Ill. Oct. 27, 2015).

For reasons already explained in the court's summary judgment decision, these factors caution strongly against instatement. To begin, Koltes credibly testified that there were no available teaching positions at CESA 5, suggesting that an innocent employee would have to be bumped to accommodate plaintiff's request. Further, Simon testified that she did not apply for more equivalent positions as they opened at CESA 5 due to her "distrust" of them, although she apparently feels differently now. Finally, Simon has obtained gainful employment as a special education teacher at Portage School District. Although not her dream job, it is generally in her chosen field and has comparable responsibilities as her former position at REACH. Accordingly, the court finds that instatement is not an appropriate remedy under all the circumstances here.

Nor is plaintiff's request to order defendant's employees to undergo additional FMLA training appropriate on the facts here. Certainly, the evidence presented at trial

shows that CESA 5 and its administrators lacked an adequate understanding of Simon's rights under the FMLA. In particular, CESA 5 should have recognized that Simon qualified for leave as a result of her on-the-job accident *and* her more than adequate notice. (Dkt. #42.) Yet CESA 5 maintained *throughout this case* that her leave did not qualify under the FMLA because she did not invoke the FMLA in her request for leave. Even at trial, Koltes remained under the impression that Simon did not "technically" take FMLA leave. Almost as disturbing, CESA 5 plainly did not understand what constituted an "equivalent" position, as Simon was placed in a job with *substantially* fewer responsibilities under materially different terms and conditions from the one she left after being injured on the job.

That said, Simon no longer works directly for CESA 5, and so any training ordered by this court would provide no direct remedy to plaintiff's wrong. *See Hickey v. Protective Life Corp.*, 988 F.3d 380, 387-88 (7th Cir. 2021) (explaining that it is necessary to have a "connection between harm and recovery under the FMLA").[4] Additionally, plaintiff has pointed to *no* case in which a court has ordered training as a remedy to an FMLA violation, further cautioning against such an award. Thus, ordering FMLA training is not an appropriate remedy under the circumstances. Hopefully, however, this opinion and order

---

[4] Although the school district employing plaintiff appears to be within CESA 5's service area, meaning it no doubt works closely with that district with respect to a variety of services, the court is unable to find that this possible, indirect benefit to plaintiff is sufficient to justify equitable relief on this record.

will send a message to the defendant that it must better understand and fully respect its employees' FMLA rights.[5]

ORDER

IT IS ORDERED that:

1) Plaintiff's request for declaratory judgment finding that defendant CESA 5 violated the FMLA by failing to return her position or to an equivalent position is GRANTED.

2) Plaintiff's request for further equitable relief is DENIED.

3) Plaintiff may have until June 21, 2021, to seek its attorney fees and costs under 29 U.S.C. § 2617(a)(3), including providing the court with any retainable agreements with counsel, all billings, invoices and attorney time records. Defendant may have 21 days to oppose that request, including providing the court its agreement with counsel, all billings, invoices and attorney time records.

Entered this 21st day of May, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[5] Having denied monetary and injunctive relief, the court has considered whether the present case is rendered moot. Specifically, the Supreme Court has explained that "a case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)). Here, although plaintiff's requested relief is not appropriate, it is not "impossible," and thus continues to present a sufficiently concrete interest to satisfy the mootness requirement. Moreover, in addition to her request for injunctive relief, plaintiff has requested a declaration that her rights were violated, and such a request may satisfy the case-or-controversy requirement where, under all the circumstances, the facts "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).